UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JONI LYNN KEENER,

        Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

18-CV-00913-MJR
DECISION AND ORDER

---

As set forth in the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018, Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). (Dkt. No. 13)

Joni Lynn Keener a/k/a Joni Lynn Cimino ("plaintiff"), brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 6) is granted, and defendant's motion (Dkt. No. 9) is denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On May 31, 2012, plaintiff filed a Title II application for DIB, alleging disability beginning February 28, 2012. (Tr. 173-76, 483)[1] Her claim was denied initially on October 24, 2012. Thereafter, plaintiff filed a written request for hearing on November 7,

---

[1] Citations to "Tr.___" refer to pages of the administrative transcript. (Dkt. No. 5)

2012. (Tr. 104-110, 127-31, 483) Plaintiff appeared and testified at a hearing held on November 8, 2013 in Buffalo, New York, before Administrative Law Judge ("ALJ") Donald T. McDougall. (Tr. 50-96)

ALJ McDougall issued an unfavorable decision on January 29, 2014. (Tr. 114-122) Plaintiff requested review of the denial by the Appeals Council on March 31, 2014. (Tr. 40). Plaintiff submitted additional evidence, and on May 21, 2015, the Appeals Council granted the request for review. (Tr. 4-39, 168-72, 472-479) On September 9, 2015, the Appeals Council issued a decision in which it accepted and adopted ALJ McDougall's findings or conclusions in their entirety with the exception of changing plaintiff's date last insured to March 31, 2014. (Tr. 11-15) The Appeals Council's decision became the Commissioner's final decision.

Plaintiff subsequently filed an action in this Court, appealing the final decision of the Commissioner. *See Keener v. Colvin*, W.D.N.Y. No. 16-CV-0028(LJV)(HBS). On December 6, 2016, Honorable Judge Hugh B. Scott issued a Report and Recommendation, recommending remand on the grounds that the ALJ failed to provide good reasons for rejecting the opinions of plaintiff's treating physician. (Tr. 591-600)

On January 25, 2017, Honorable Judge Lawrence J. Vilardo issued an Order adopting the Report and Recommendation, reiterating that the ALJ did not provide good reasons for failing to give controlling weight to the treating physician's medical opinion. (Tr. 603-07) The Court added that, instead of giving controlling weight to the treating physician's medical opinion, "the ALJ gave great weight to the opinion of a medical consultant who reviewed the plaintiff's medical record in February 2013. That review, which occurred a month before the plaintiff underwent surgery, clearly was stale . . . ."

*Keener v. Colvin*, No. 16-CV-28(LJV)(HBS), 2017 WL 367155, at *2 (W.D.N.Y. Jan. 25, 2017).

On April 21, 2017, the Appeals Council issued an Order vacating the final decision of the Commissioner and remanding the case for another hearing, additional evidence, and any further action needed to complete the administrative record and issue a new decision. (Tr. 610)

Plaintiff appeared and testified at a hearing held on April 10, 2018 in Buffalo, New York, before ALJ Mary Mattimore. A vocational expert also appeared and testified. (Tr. 507-547) The ALJ issued an unfavorable decision on May 7, 2018. (Tr. 483-495) This action followed. (Dkt. No. 1)

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record,

3

read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the

5

claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.*  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1).  If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

6

### III.    *The ALJ's Decision*

ALJ Mattimore followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff had not engaged in substantial gainful activity between February 28, 2012, and March 31, 2014. (Tr. 486) At step two, the ALJ found that plaintiff had the severe impairments of vertebrogenic disorders, scoliosis with history of surgeries to correct, degenerative disc disease of the cervical and lumbar spines, bursitis, and migraine headaches. (Tr. 486-87) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 487-88) Before proceeding to step four, the ALJ found that plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 404.1567(a), because she was able to lift and/or carry ten pounds occasionally and less than ten pounds frequently, stand and/or walk for two hours in an eight-hour workday, and sit for six hours in an eight-hour workday. Additionally, she required the freedom to change positions from sitting to standing, or vice versa, every half-hour in an eight-hour workday. She was unable to climb ladders, ropes, scaffolds, stairs, and/or ramps, but she was able to occasionally balance, stoop, kneel, crouch, crawl, and push/pull bilaterally. Plaintiff could frequently finger, handle, and feel bilaterally, but she was unable to reach overhead bilaterally, and was frequently able to reach in other directions/planes bilaterally. She was unable to work at unprotected heights and with hazardous machines. Plaintiff was able to perform simple, routine work, and make simple workplace decisions, not at production-rate pace. She was able to maintain attention and concentration for two-hour blocks of time in an eight-hour workday, and could to tolerate minimal changes in work processes and

settings. (Tr. 488) At step four, the ALJ found that plaintiff had no past relevant work. (Tr. 493) At step five, the ALJ determined that plaintiff was capable of performing other work existing in significant numbers in the national economy, including jobs such as food and beverage order clerk, call-out operator, and charge account clerk. (Tr. 493-94) Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act. (Tr. 495)

## IV. *The Parties' Arguments*

Plaintiff contends that the physical RFC was unsupported by substantial evidence because the ALJ improperly considered a stale opinion by State agency medical consultant Dr. Karen Sarpolis, and improperly developed the RFC using her own lay opinion. (Dkt. No. 6-1 at 17-29) Defendant, in turn, argues that the ALJ was permitted to rely upon Dr. Sarpolis' opinion because: (1) State agency medical consultants are highly qualified experts in disability evaluation and their opinions can constitute substantial evidence; (2) there was evidence in the record that indicated no subsequent deterioration of plaintiff's impairments; and (3) the ALJ assigned more limitations to the RFC determination than provided by Dr. Sarpolis' opinion. (Dkt. No. 9-1 at 26-29)

For the following reasons, Court agrees with plaintiff that remand is required.

## V. *Analysis*

In making her RFC determination,[2] the ALJ relied upon Dr. Sarpolis' February 4, 2013 opinion that plaintiff was capable of performing light work with occasional climbing

---

[2] A claimant's RFC reflects what he or she "can still do despite his or her limitations." *Desmond v. Astrue*, No. 11-CV-0818, 2012 WL 6648625, at *5 (N.D.N.Y. Dec. 20, 2012) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). To determine a claimant's RFC, "the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis." *Id.* (citing 20 C.F.R. § 404.1545(a)); *see also* 20 C.F.R. § 416.945(a). The ALJ assesses RFC "based on all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

8

ramps/stairs and ladders/ropes/scaffolds, and occasional crawling. (Tr. 352-358)[3] Dr. Sarpolis listed plaintiff's impairments as scoliosis, fibromyalgia, syringomyelia, spinal stenosis, herniated discs, neck problems, back problems, left hip bursitis, and migraines. (Tr. 357).

The ALJ formulated plaintiff's RFC as sedentary work with multiple, additional limitations listed above. (Tr. 488, *see supra* at 7-8) In her assessment, the ALJ afforded significant weight to Dr. Sarpolis' opinion. (Tr. 352-358, 492) She acknowledged that opinions were issued prior to plaintiff's cervical and lumbar surgeries, and reasoned that:

> [T]he record clearly shows that both conditions were well-documented in the file at the time of Dr. Sarpolis' review. At that time, the claimant was reporting significant pain related to neck and back conditions as well as hip pain and migraine headaches, which Dr. Sarpolis pointed out in her narrative, while the claimant's doctors were noting that any possible lumbar spine surgery was being delayed in the interest of cervical spine surgery; in addition, as noted above, the record shows that the claimant responded well to both surgeries.
>
> Nonetheless, due to the fact that Dr. Sarpolis' report was issued prior to the surgeries and subsequent reports detailing ongoing and significant clinical findings, the claimant was assigned more significant limitations in the above-listed [RFC], including a limitation to sedentary work as well as more restricting postural activities.

(Tr. 492) As plaintiff points out, the RFC finding is problematic for at least two reasons.

First, "an ALJ should not rely on 'stale' opinions–that is, opinions rendered before some significant development in the claimant's medical history." *Robinson v. Berryhill*, No. 17-CV-0362, 2018 WL 4442267, *4 (W.D.N.Y. 2018). "[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial

---

[3] The previous ALJ relied upon the same opinion, affording it "great weight" while rejecting the medical opinion of plaintiff's treating physician, Dr. Edward Simmons. (Tr. 111-22) This Court's 2017 Order found that Dr. Sarpolis' opinion was "clearly stale." (Tr. 605) The Appeals Council's remand order directed compliance with this Court's Order. (Tr. 610)

9

evidence to support an ALJ finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015), *aff'd*, 652 Fed. Appx. 25 (2d Cir. 2016) (quotation omitted); *accord Davis v. Berryhill*, No. 16-CV-6815, 2018 WL 1250019, *3 (W.D.N.Y. 2018). "The mere passage of time does not render an opinion stale. Instead, a medical opinion may be stale if subsequent treatment notes indicate a claimant's condition has deteriorated." *Whitehurst v. Berryhill*, No. 16-CV-1005, 2018 WL 3868721, *4 (W.D.N.Y. 2018); *see also Best v. Berryhill*, No. 17-CV-0795, 2019 WL 1146341, *3 (W.D.N.Y. 2019) (in determining whether opinion evidence is stale, the "relevant issue is whether [claimant's] condition *deteriorated* during [the relevant] period.") (emphasis in original).

Here, the ALJ acknowledged that Dr. Saroplis' opinions pre-dated plaintiff's surgeries and the "subsequent reports detailing ongoing significant clinical findings." (Tr. 492) Indeed, the record contains multiple examinations conducted before and after her surgeries reveal abnormal findings, including an antalgic gait, scoliotic or hypolordotic posture, spinal tenderness, limited range of motion, and decreased reflexes and sensation. (Tr. 285, 296, 305, 308, 337, 345, 379, 395, 427, 432, 455, 458, 462, 470, 475, 478, 723, 830, 833, 890, 899, 1217, 1250-1251, 1255) In contrast, the ALJ cited to four exhibits indicating that plaintiff was "doing well in response to the surgery," two of which appear to refer to the same document. (Tr. 492 [citing Exhs. B26F and B35F at 135], *see also* Tr. 718, 892) Thus, is this is not a case where there was a lack of evidence that a plaintiff's condition significantly deteriorated. *Compare Andrea L v. Saul*, No. 18-CV-858, 2019 WL 4170289, at *8 (N.D.N.Y. Aug. 30, 2019) (rejecting staleness argument where there was no indication that plaintiff's mental limitations significantly deteriorated and ALJ adequately assessed post-opinion evidence) *with Welsh v. Colvin*, No. 14-CV-

10

6715, 2016 WL 836081, at *12 (W.D.N.Y. Mar. 4, 2016) (finding that the ALJ erred in according the opinion "great weight" to the consultative examiner's opinion because it predated evidence of deterioration of the claimant's medical conditions and therefore could not constitute substantial evidence).

Notably, the issue of the staleness of Dr. Sarpolis' opinion was raised previously when ALJ McDougall's decision was appealed to this Court in 2016. In this Court's Decision and Order, Judge Vilardo found:

> [T]he ALJ gave great weight to the opinion of a medical consultant who reviewed the plaintiff's medical record in February 2013. *That review, which occurred a month before the plaintiff underwent surgery, clearly was stale— with respect to both the improving condition of the plaintiff's cervical spine after surgery and the deteriorating condition of her lumbar spine.*

*Keener*, 2017 WL 367155, at *2 (emphasis added).

Subsequently, on April 21, 2017, the Appeals Council remanded the case further proceedings "consistent with the order of the court." (Tr. 610)

On remand, ALJ Mattimore again relied upon Dr. Sarpolis' opinion, noting that the report was issued prior to plaintiff's surgeries and thus assigned plaintiff "more significant limitations in the above-listed residual functional capacity, including a limitation to sedentary work as well as more restricting postural activities." (Tr. 492) It is unclear how the ALJ formulated these limitations without an updated medical opinion and without relying on plaintiff's testimony.[4] In this regard, the ALJ's second error was relying on the raw medical findings to formulate functional limitations. *See Cosnyka v. Colvin*, 576 Fed.Appx. 43, 46 (2d Cir. 2014) (finding the ALJ's highly specific finding that the claimant would be off task "six minutes to every hour" was arbitrary where the consultative

---

[4] In evaluating plaintiff's testimony, the ALJ found her statements not fully consistent with the balance of the record evidence. (Tr. 489)

11

examiner opined the claimant would require "regular comfort breaks" and claimant's testimony also failed to support the ALJ's highly specific finding); *see also Seil v. Colvin*, No. 15-CV-6275, 2016 WL 1054759, at *5 (W.D.N.Y. Mar. 17, 2016) ("The doctor did not indicate what the "mild" limitation was, nor did she comment at all on what, if any, limitations Seil had with regard to sitting. . . . Before fashioning his limitations on Seil's ability to stand, walk, or sit, the ALJ was obligated to obtain medical support, which does not exist in this record. Dr. Boehlert's vague description of a "mild limitation" . . . [was] insufficient to support the ALJ's conclusion . . .").

"[A]lthough the RFC determination is an issue reserved for the commissioner, an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *House v. Astrue*, No. 11-CV-915 GLS, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013) (internal quotation marks and citations omitted). In this case, without any other functional assessment of plaintiff's physical impairments by a medical source, the ALJ was not permitted to conclude Plaintiff retained the ability to perform sedentary work without developing the record with another medical opinion.

The Court is aware that an ALJ is permitted to make a common sense judgment as to a claimant's functional capacity when there are only minor physical impairments, or when the record is clear and there is a useful assessment of plaintiff's limitations. *See Monroe v. Comm'r of Soc. Sec.*, No. 16-1042-CV, 2017 WL 213363, at *3 (2d Cir. Jan. 18, 2017) (RFC assessment was supported by substantial evidence, despite the ALJ's rejection of a treating physician's opinion, because the ALJ "reached her RFC determination based on [the treating physician's] contemporaneous treatment notes,"

which provided evidence "relevant to [the claimant's] ability to perform substantial gainful activity" as well as "relevant to her functional capacity."); *see also Walker v. Astrue*, No. 08–CV–0828, 2010 WL 2629832, at *7 (W.D.N.Y. June 11, 2010) ("'where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment.'") (quoting *Manso–Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 17 (1st Cir.1996)). Neither of those circumstances are present in this case. *See Muhammad v. Colvin*, No. 16-CV-6369, 2017 WL 4837583, at *4 (W.D.N.Y. Oct. 26, 2017) (remanding where treatment notes "did not provide any insight on Plaintiff's functional limitations . . . ."); *see also Stein v. Colvin*, No. 15-CV-6753, 2016 WL 7334760, at *4 (W.D.N.Y. Dec. 19, 2016) ("Moreover, the ALJ could not render a common sense judgment as to Stein's functional capacity without a medical opinion, because Stein has several complicated and longstanding mental impairments including bipolar, anxiety, and depressive disorders, and ADD.") (internal quotation marks omitted). The RFC finding is therefore unsupported by substantial evidence. *See Bailey v. Berryhill*, No. 17-CV-6013, 2017 WL 5589484, at *4 (W.D.N.Y. Nov. 21, 2017) ("It is unclear to the Court how the ALJ, who is not a medical professional, was able to make this highly specific determination without reliance on a medical opinion . . . As a result, the Court finds that the mental RFC assessment is not supported by substantial evidence.") (citing *Schmidt v. Sullivan,* 914 F.2d 117, 118 (7th Cir. 1990)). Due to this gap in the record, remand is required. *See Williams v. Colvin*, No. 13-CV-1186, 2016 WL 1553443, at *4 (W.D.N.Y. Apr. 18, 2016)) ("[T]he absence of any medical source opinion left a clear gap in the

13

record, which triggered the ALJ's duty to further develop it by obtaining such opinions regarding plaintiff's physical and mental limitations.").

On remand, the ALJ is directed to obtain an updated medical opinion.[5] In light of the time elapsed since plaintiff's initial filing for benefits, in part due to the ALJ's failure to observe the Court's initial remand Order—this claim should receive expedited consideration.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 6) is granted, and the Commissioner's cross-motion for judgment on the pleadings (Dkt. No. 9) is denied. Accordingly, the decision of the Commissioner is reversed, and this matter is remanded to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

**SO ORDERED.**

Dated:   February 4, 2020
         Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge

---

[5] The Court notes that it makes no finding as to the merits of plaintiff's disability claim.

14